UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TRACEY MILLER, SR., RONALD
MILLER, SR., LAVINA MILLER,
S.M. (a minor), and TRACEY
MILLER, SR., GUARDIAN AD LITEM
for S.M.,

          Plaintiffs,

     v.

WATERFORD TOWNSHIP, et al.,

          Defendants.

HONORABLE JOSEPH E. IRENAS

 CIVIL ACTION NO. 11-3405
 CIVIL ACTION NO. 11-3578
 CIVIL ACTION NO. 11-3579
          (JEI/JS)

          **OPINION**

**APPEARANCES:**

LAW OFFICES OF CHARLES A. FIORE
By:  Charles A. Fiore, Esq.
34 South Main Street
P.O. Box 525
Williamstown, New Jersey 08094
     Counsel for Plaintiffs

BARKER, GELFAND & JAMES, P.C.
By:  Todd J. Gelfand, Esq.
The Laurelwood Corporate Center
1101 Laurel Oak Road
Suite 110
Voorhees, New Jersey 08043
     Counsel for Defendant Waterford Township

REYNOLDS & HORN, P.C.
By:  John J. Bannon, Esq.
750 Route 73 South
Suite 202A
Marlton, New Jersey 08053
     Counsel for Defendants Timothy Lyons and Brent Staiger

POWELL, BIRCHMEIER & POWELL
By: James R. Birchmeier, Esq.
1891 State Highway 50
P.O. Box 582
Tuckahoe, New Jersey 08250
    Counsel for Defendants Joseph McNally and Richard
    Passarella

**IRENAS**, Senior District Judge:

Plaintiff Tracey Miller ("Tracey") initiated this action

pursuant to 42 U.S.C. § 1983 against Waterford Township, the

Borough of Chesilhurst, Evesham Township, and several of their

police officers.  Following the initiation of Tracey's suit,

additional Plaintiffs Ronald and Lavina Miller (Tracey's

parents, "Ronald" and "Lavina") and S.M. (Tracey's minor child)

filed suit alleging similar violations of their federal and

state constitutional rights stemming from incidents of alleged

harassment, unlawful arrest, and excessive force.[1]  Pending

before the Court are three Motions for Summary Judgment pursuant

to Federal Rule of Procedure 56(a) in each of the three cases,

filed by (1) Defendant Waterford Township, (2) Defendants

Timothy Lyons ("Lyons") and Brent Staiger ("Staiger"), and (3)

Defendants Joseph McNally ("McNally") and Richard Passarella

("Passarella").  For the reasons that follow, these motions are

granted in part and denied in part.  A summary of each claim and

its disposition appears at the end of this Opinion.

---

[1] The Court exercises subject-matter jurisdiction pursuant to 28 U.S.C. §§
1331 and 1367.  The three cases have not been consolidated at this time.

**I.**

Though some facts remain in dispute, the Court briefly reviews the circumstances giving rise to the claims at issue. The claims in these three lawsuits arise from three incidents in late 2010 and early 2011.  A fourth incident in early 2012 is key to the supplemental counts alleged by Tracey against McNally.  The Court begins by providing relevant background information and then describes each of the incidents giving rise to the instant suits.

Tracey Miller is a forty-five year-old male, previously married to Jennifer Miller.  (Pls.' S.S.O.M.F. at ¶ 2)[2]  The divorce between Tracey and Jennifer was not amicable, as it included cross-complaints for domestic violence, restraining orders, and police involvement at various points in 2009 and 2010.  (*See*, *e.g.* Defs. Waterford Twp. S.O.M.F. ¶ 7)  Following their divorce, at some point in March 2010, Jennifer and her father, Tom Watson, brought information to police concerning allegations that Tracey sent sexually explicit photographs to Tracey's step-daughter, V.W. (a minor).  (Defs. Waterford Twp. S.O.M.F. ¶ 9)  The substance and disposition of these criminal charges are not otherwise relevant to the instant suits.

---

[2] References to "Pls.' S.S.O.M.F." are to the Plaintiffs' Supplemental Statement of Undisputed Material Facts.

The specific facts giving rise to the instant suits begin with a traffic stop of Tracey on October 14, 2010. (Defs. Waterford Twp. S.O.M.F. ¶ 16) Lyons initiated this stop when Tracey failed to reach a full stop at a stop sign. (*Id.*; Oct. 14 Police Rep. at 2) The police report detailing Tracey's arrest contains a number of allegations concerning Tracey's behavior while in custody, including that he was disruptive and uncooperative. (Oct. 14 Police Rep. at 3) In particular, Tracey and McNally engaged in a verbal confrontation while McNally administered the DWI tests following Tracey's arrest. (Defs. Waterford Twp. S.O.M.F. ¶¶ 19-23) As a result of the stop and subsequent criminal proceedings in the New Jersey court system, Tracey was convicted of a DWI charge.

Four days later, Tracey was the subject of a second police stop in Waterford Township. (Defs. Waterford Twp. S.O.M.F. ¶ 24) On October 18, 2010, Tracey was driving S.M., his minor daughter, in his pickup truck to a friend's house when he drove past Tom Watson's home. (Tracey Miller Dep. at 114, Aug. 27, 2012) As they went by, Tracey observed McNally and Watson having a conversation, which Tracey elected to record with a handheld camera while he was driving. (T. Miller Dep. at 113:18, Aug. 27, 2012) Shortly after driving past, Tracey realized he had left something behind at home and therefore

turned back, again passing McNally and Watson.[3] (T. Miller Dep. at 114-116, Aug. 27, 2012) As Tracey went back to his home, Tracey ended up following McNally, who was now in his police vehicle and driving. (Defs. Waterford Twp. S.O.M.F. ¶ 26) After a short distance, McNally pulled to the side of the road and let Tracey pass, with the result that McNally now began traveling behind Tracey.

A few moments later, Tracey pulled his vehicle into a vacant parking lot, where the parties dispute what happened next. (Defs. Waterford Twp. S.O.M.F. ¶ 29) Tracey maintains that he pulled over to check on a bucket that was in the back of his vehicle, and then quickly got back into his vehicle and prepared to drive away before McNally turned into the parking lot and initiated a confrontation. (T. Miller Dep. 133-34, Aug. 27, 2012) In Tracey's retelling, after checking on his cargo in the back of his pickup truck, he observed McNally's vehicle entering the parking lot and then without any interaction, McNally came up to Tracey's driver-side window with his gun drawn. (T. Miller Dep. at 140:15, Aug. 27, 2012)

On the other hand, McNally's version of events conflicts with Tracey's recollection. In McNally's retelling of the

---

[3] It is unclear whether Tracey left behind his license, cigarettes, phone, or money for his daughter, but resolution of this issue is not necessary for the resolution of the instant motions. (*See* T. Miller Dep. at 115:9-11, Aug. 27, 2012)

5

incident, McNally drove past the lot, observed Tracey again taking a photograph of him, and then as McNally entered the parking lot to approach Tracey and investigate the nature of the photographs, Tracey put his own vehicle in drive in an attempt to leave. (Defs. Waterford Twp. ¶¶ 29-34)

Though the parties dispute the initiation of this confrontation, they agree that ultimately Tracey exited the vehicle (leaving S.M. behind in her seat) and fled on foot with McNally giving chase. (Defs. Waterford Twp. S.O.M.F. ¶¶ 36-38) At this time, Bernard Davis, an off-duty Evesham Township police officer, happened by and gave assistance to McNally in apprehending Tracey. (Defs. Waterford Twp. S.O.M.F. ¶ 38) As a result of these disputed circumstances, Tracey was charged with stalking, resisting arrest, and obstructing, charges that apparently remain pending. (Defs. Waterford Twp. S.O.M.F. ¶ 40)

The third and final incident relevant to all three lawsuits was an encounter between Tracey, S.M., and Ronald and Lavina on April 9, 2011. Sometime between 6:50 pm and 7:15 pm on that evening, just as Officer Staiger's shift was beginning, Staiger received a phone call from Eric Madera, a private citizen, indicating that Tracey might later be driving while under the influence of alcohol with his children in his car. (Defs. Waterford Twp. S.O.M.F. ¶ 42; Brent Staiger Dep. at 20:8-11) Staiger reported this tip to Sergeant Passarella when he came on

6

duty, and the information was then shared with Lyons and other officers on duty that evening in Waterford Township. (Defs. Waterford Twp. S.O.M.F. ¶ 42)

Many of the other facts regarding the April 9 incident remain in dispute. As Tracey, with S.M. in his car, drove past the Rosedale Gun Club on Pestletown Road around 9:10 pm, Lyons reported that he observed Tracey's vehicle to have illegally tinted windows, precipitating a traffic stop. (Lyons Apr. 9, 2011 Police Rep. at 1) Lyons activated his sirens and pulled into the roadway behind Tracey to pull him over, but Tracey failed to immediately stop and instead proceeded some distance down Pestletown Road to Ronald and Lavina's home before pulling off the roadway. (Lyons Apr. 9, 2011 Police Rep. at 1) Once there, Lyons reported that Tracey jumped out of his vehicle and started walking towards the residence, apparently fleeing from Lyons's commands to stop. (Lyons Apr. 9, 2011 Police Rep. at 2) A physical confrontation ensued, where Lyons grabbed Tracey and pulled him to the ground during the course of arresting Tracey. (Lyons Apr. 9, 2011 Police Rep. at 2) According to Lyons, Ronald and Lavina verbally and physically tried to prevent Tracey's arrest, and a physical confrontation with Ronald ensued. (Lyons Apr. 9, 2011 Police Rep. at 2) With McNally finally arriving at the scene, Lyons completed his arrest of

Tracey and turned his attention back to Ronald, who was injured as Lyons arrested him. (Lyons Apr. 9, 2011 Police Rep. at 2)

On the other hand, Tracey, Ronald, and Lavina testified that the April 9 incident occurred far differently. For example, Tracey indicated at his deposition that his vehicle's windows were rolled down when Lyons pulled him over, making it impossible for Lyons to have seen Tracey's illegally tinted windows. (T. Miller Dep. at 186:19-21, Sept. 4, 2012) Next, Tracey indicated that he never attempted to flee, an account confirmed by Ronald's observations as well. (T. Miller Dep. at 244, Sept. 4, 2012; Ronald Miller Dep. at 16) In short, Tracey, Ronald, and Lavina indicated that the physical altercation that resulted in Tracey and Ronald's injuries occurred as a result of unprovoked aggression on Lyons's part. Moreover, Lyons and Lavina disagree about whether Lyons hit Lavina with his flashlight – Lyons indicates that he never made contact with her, while Lavina claims she was hit in the arm. (*Compare* Timothy Lyons Dep. at 155:1 *with* Lavina Miller Dep. at 62:3)

Finally, a fourth incident on March 12, 2012, gave rise to two supplemental claims brought by Tracey against McNally. On that evening, Tracey was drinking at Starky's Pour House, a bar in Winslow Township, when McNally and Bill Monroe arrived at the bar. (T. Miller Dep. at 60:5-7, Sept. 4, 2012) Upon McNally and Monroe's arrival, a bartender warned Tracey that McNally had

8

just entered the bar, and shortly after that, McNally and Monroe sat down at the bar across from Tracey. (T. Miller Dep. at 61:15-62:1, Sept. 4, 2012; *id.* at 63:18) As soon as they were settled, Tracey explained that a verbal confrontation broke out, with McNally "yelling across the bar," threatening to "kick [Tracey's] ass." (T. Miller Dep. at 64:12-19, Sept. 4, 2012) As the yelling escalated, the bar owner ultimately defused the altercation by telling McNally and Monroe to "knock it off," and gave Tracey a ride home. (T. Miller Dep. at 65:5-10, Sept. 4, 2012)

As a result of the first three incidents, Tracey Miller filed the instant suit (docket 11-cv-3405) on June 13, 2011.[4] On June 22, 2011, Ronald and Lavina filed their suit resulting from the April 9, 2011 altercation at their home (docket 11-cv-3578). On the same date, S.M. filed suit as well (docket 11-cv-3579), alleging similar claims as Tracey, Ronald, and Lavina from the events described herein. Following the filing of the three suits, a number of Defendants filed motions to dismiss and motions for judgment on the pleadings, which were granted in part and denied in part. Following discovery, the Defendants

---

[4] Claims regarding the fourth incident, the March 12, 2012 altercation between Tracey and McNally, were added as part of a supplement to the Amended Complaint, filed in May, 2012. (Dkt. no. 112, 11-cv-3405)

filed the instant motions for summary judgment, which the Court now considers.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 249, 252 (1986). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a

genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter.  *Anderson*, 477 U.S. at 249.

## III.

The Court begins with the Motion for Summary Judgment filed by the municipal Defendant, Waterford Township, which may be granted in full as to each claim asserted by Tracey, Ronald, Lavina, and S.M.  The Court then considers the motions filed by the individual Defendants.

### A.

Waterford Township seeks summary judgment on each of the Plaintiffs' claims that it is liable for civil rights violations, as well as claims of state law negligence.  Each is addressed in turn.

#### 1.

Waterford Township argues that the Plaintiffs have failed to put forward any facts that suggest Waterford Township is liable for the acts of any of its police officers, therefore it is entitled to relief from the Plaintiffs' respective *Monell*

claims.[5]  Because of the common features of each Plaintiff's

*Monell* claim, the Court considers all of these claims together.

Section 1983 provides, in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State . . . subjects, or causes to be
> subjected, any citizen of the United States .
> . . to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law . . . .

42 U.S.C. § 1983.

In cases arising under § 1983, municipalities cannot be

held liable on a *respondeat superior* theory.  *Monell*, 436 U.S.

at 691.  Rather, municipalities are only liable "for their own

illegal acts." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011)

(quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  As

explained by the Third Circuit, courts have created a "two-path

track to municipal liability under § 1983, depending on whether

the allegation is based on municipal policy or custom."

*Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir.

2013) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d

Cir. 1996)).

These two types of liability are as follows:

> Policy is made when a "decisionmaker
> possess[ing] final authority to establish a
> municipal policy with respect to the action"
> issues an official proclamation, policy, or

---

[5] *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978)

> edict. A course of conduct is considered to
> be a "custom" when, though not authorized by
> law, "such practices of state officials [are]
> so permanent and well-settled" as to virtually
> constitute law.

*Mulholland*, 706 F.3d at 237 (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)). Evidence of knowledge and acquiescence may also establish that a custom exists sufficient for finding liability. *Mulholland*, 706 F.3d at 237.

Municipalities are not liable for acts of police officers unless a municipal policy or custom amounts to a "deliberate indifference to the rights of people with whom the police come into contact." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is defined as "'a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *Harris*, 489 U.S. at 389 (quoting *Pembaur*, 475 U.S. at 483-84 (plurality) (Brennan, J.)).

In light of this definition of deliberate indifference, a municipality's inadequate training or supervision gives rise to liability where municipal policymakers are "on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights . . . [and they] choose to retain that program." *Connick*, 131 S.Ct. at 1360. Similar to the

13

inadequate training standard, a widespread behavior by police officers is considered a municipal custom where there is "knowledge and acquiescence by the decisionmaker." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007)). Finally, the plaintiff must also show that the alleged policy or custom was the proximate cause of the injuries suffered. *Watson*, 478 F.3d at 156 (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). To demonstrate causation from a municipal custom, the plaintiff must show that the "occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." *Watson*, 478 F.3d at 156 (quoting *Bielevicz*, 915 F.2d at 851)).

In their opposition to Waterford Township's Motion for Summary Judgment, the Plaintiffs argue that Waterford Township failed to properly train or supervise the sergeants in the police force, which constitutes a custom or policy that reflects deliberate indifference to their rights, permitting them to recover. (Pls. Br. in Opp. to Defs. Waterford Twp. at 37-38.) However, Waterford Township has demonstrated that the record lacks any evidence that the Plaintiffs are the victims of either inadequate training or a custom sufficient to impose § 1983 liability on Waterford Township.

First, the record fails to establish that the Plaintiffs were the victims of inadequate training.  The Plaintiffs point to Defendant Passarella's testimony that, as the longest tenured Sergeant on the Waterford Township police force, he would "take charge" of any incident upon his arrival at the scene. (Passarella Dep. 87:2-7.)  Similarly, Defendant McNally, in his role as a Sergeant, would have supervisory responsibility for the officers that reported to him.  (Joseph McNally Dep. 110:7-8.)  The Plaintiffs argue that Passarella's seniority (and by extension, McNally's supervisory role as a Sergeant), granted him responsibility for training all officers that fell under their supervision and authority.  (Pls. Opp. Br. to Defs. Waterford Twp. at 40.)  However, this supervisory responsibility does not demonstrate deficient training leading to a constitutional violation.  By failing to identify or demonstrate the substance of some missing training, the Plaintiffs cannot show, via actual or constructive notice, that municipal policymakers were aware of any such deficient training.  Because the Plaintiffs must demonstrate that municipal policymakers had such actual or constructive notice of the deficient training, Waterford Township is not liable for deficient or inadequate training that would give rise to liability under § 1983.

Second, the Plaintiffs have failed to establish that Waterford Township's "municipal custom" existed that would

establish § 1983 liability for Waterford Township.  The
Plaintiffs highlight Waterford Township Standard Operating
Procedure #41, a General Order that mandates that "[s]upervisors
are to review all reports submitted for content and completion
and to make sure all reports are accounted for."  (Waterford
Twp. Police Dept. Standard Operating Procedure # 41 at 1.)  The
Plaintiffs argue that "had [Lieutenant Daniel Cormaney] reviewed
[McNally's] police report, it would have been clear that the
basis for the [October 18, 2010] stop was unlawful and thus
violated [Tracey Miller's] First Amendment and Fourteenth
Amendment rights."  (Pls. Opp. Br. to Defs. Waterford Twp. at
41)  This argument is based on Lieutenant Cormaney's admission
that his review of reports filed by subordinate officers
(including Sergeant McNally) were undertaken randomly, rather
than in compliance with SOP #41, which requires the review of
"all reports."  (Daniel Cormaney Dep. at 29:24-30:2)

While this evidence suggests that Cormaney failed to follow
SOP #41, it neither establishes a municipal custom, nor the
requisite causation to impose liability.  As to causation, it
does not follow that because Cormaney failed to faithfully
follow SOP #41 and review McNally's report of the October 18
arrest of Tracey Miller, that the April 9, 2011 incident at
Ronald and Lavina Miller's home would have been avoided.  The
failure to review every single report filed by McNally does not

lead to the conclusion that any Waterford Township police officers would use excessive force against Tracey, Ronald, and Lavina nearly six months after McNally's October 18, 2010 traffic stop.

Moreover, Cormaney's failure to follow SOP #41 does not demonstrate that a municipal decisionmaker knowingly acquiesced to Cormaney's actions – the requisite standard for imposing liability. There is no indication in the record that any municipal decisionmaker was aware or unaware of the relevant police department policies and the execution of those policies. Given the absence of evidence in the record regarding both causation and acquiescence, the Plaintiffs cannot demonstrate a municipal custom existed sufficient to impose § 1983 liability.

Finally, permitting Waterford Township police officers to use their personal cell phones fails to constitute a municipal policy sufficient for imposing § 1983 liability on Waterford Township. The record contains no reference to any municipal policymaker who formally permitted the use of cell phones for police business.[6] Though the record indicates that McNally and

---

[6] For example, there is no mention of a policy regarding the usage of cell phones in the Waterford Township Code of Conduct. (*See* Code of Conduct, Rules and Regulations, Adopted by Waterford Township Police Department) The Code of Conduct is based on a "Model Police Manual," with modifications to account for the local law and needs, which were determined as a "result of a great deal of research and meetings between the Appropriate authority, the Township Solicitor, and the Chief of Police, and all in coordination with State and Federal law." (*Id.* at 1.)

Lyons spoke by cell phone on the evening of April 9, 2011, such evidence does not demonstrate that this was sanctioned by a municipal policymaker. (*See* McNally Dep. 262:19-21.) Nor does the fact that McNally testified that Waterford Township police officers "talk on the cell phone all the time." (McNally Dep. 261:16-17.) The Plaintiffs therefore cannot demonstrate that Waterford Township had a policy in place to violate the Plaintiffs' constitutional rights.

In sum, the undisputed record fails to demonstrate that Waterford Township is liable for the Plaintiffs alleged § 1983 claims. Waterford Township is therefore entitled to summary judgment in its favor on each of the § 1983 claims.[7]

## 2.

The Court next turns to the negligence claims brought by each Plaintiff against Waterford Township.

The New Jersey Tort Claims Act imposes liability on a public entity "for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2(a). New Jersey recognizes a cause of action for negligent hiring or

---

[7] Counts III and VII in Tracey's suit, Counts III and IV in Ronald and Lavina's suit, and Counts IV and VI in S.M.'s suit.

retention of employees in the private sector under a theory of *respondeat superior*. *Di Cosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982). Municipalities, like private sector entities, may be held liable for the negligent hiring or retention of a police officer under this theory. *Denis v. City of Newark*, 704 A.2d 1003, 1007 (N.J. Super. Ct. App. Div. 1998). "In order to prevail under this theory, a plaintiff must show that the municipality knew or should have known of the police officer's dangerous propensities and the risk of injury he or she presents to the public." *Love v. Monroe Twp.*, No. 09-cv-1665 (JAP), 2011 WL 765981, at *4 (D.N.J. Feb. 25, 2011) (citing *Denis*, 704 A.2d at 1007).

In *Denis*, the New Jersey Superior Court found that the Newark Police Department knew or should have known of an individual police officer's dangerous propensities as a result of that officer's personnel file, which contained records of two incidents in a two-week span following two separate motor vehicle collisions where the officer physically assaulted two other drivers without cause. *Denis*, 704 A.2d at 1007-08, 1008 n.6. Furthermore, the officer's record included nine suspensions for violating police regulations in a ten-year span. *Id.* at 1008. In short, such "assaultive behavior on defenseless citizens" stated a *prima facie* claim for negligent retention

because of the officer's "dangerous propensities and the risk of injury he presented to the public." *Id.*

Here, the undisputed record fails to demonstrate that Waterford Township could be found liable for negligent hiring or retention. The Plaintiffs argue that McNally and Passarella were "known throughout town as the 'Booze Brothers,'" (Pls. Opp. Br. to Defs. Waterford Twp. at 47; Cormaney Dep. 129:6-7), and that Lieutenant Cormaney and Chief Knoll were aware of a bar fight that involved McNally and Passarella, (*See* Cormaney Dep. at 139-146; John Knoll Dep. 78-82). Even in light of their superiors' knowledge of the nickname and bar fight, a single argument in a bar, even one that resulted in an investigation by the Camden County Prosecutor's office,[8] is insufficient to suggest that McNally and Passarella constituted a risk of injury to the public akin to *Denis*. Moreover, the nickname "Booze Brothers" does not indicate a propensity for violence; as Lieutenant Cormaney testified, he was not sure what the "Booze Brothers" term even really meant, but instead had just heard the name in passing.[9] (Cormaney Dep. at 129:6-7.) In other words,

---

[8] Further distinguishing McNally and Passarella's altercation in Rack's Bar (that gave rise to the Camden County Prosecutor's Office investigation) from the tortious behavior in other police negligent retention cases is the fact that McNally had the charges against him dismissed, while Passarella's were vacated on appeal. (Cormaney Dep. 145:11, 146:8.)

[9] The Court notes that even if evidence of the nickname were not deemed to be hearsay and therefore admissible, the Federal Rules of Evidence prohibit the

there is no way that a jury could conclude that these events would have likely led to future physical violence. While perhaps irresponsible, such reputation evidence combined with one physical incident of violence is distinguishable from the tortious behavior described in *Denis*.

The Court takes a similar view of the factual record regarding Lyons. Waterford Township concedes that Lyons "has the highest number of internal complaints within the past 3 years," but the record indicates that this is a reflection of doing a "disproportionate amount of work for a patrol officer." (Cormaney Dep. at 153:23-154:5.) In the absence of any other indication in the record that Lyons demonstrated some dangerous propensity, no charge for negligent hiring can be sustained.

In light of the undisputed record, the Plaintiffs cannot demonstrate that Waterford Township is liable for negligent hiring or retention. Waterford Township is therefore entitled to summary judgment on each of the Plaintiffs' negligence claims.[10]

---

admission of character evidence "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed.R.Evid. 404.

[10] Specifically, Count XXIII in Tracey's suit, Count XIV in Ronald and Lavina's suit, and Count XIV in S.M.'s suit.

**B.**

The Court turns next to the Motions for Summary Judgment
filed by Lyons and Staiger, and by McNally and Passarella.  In
considering these Motions, the Court first focuses on Staiger
and Passarella, and finally turns to the claims asserted against
each of the other individual Defendants.

**1.**

In viewing the factual record in the light most favorable
to the non-moving Plaintiffs, the Court is able to grant summary
judgment to Staiger on each claim asserted against him.  The
Court may also grant summary judgment in favor of Passarella.

**a.**

As a preliminary matter, there is no dispute that Staiger
was not present or involved in any of the events in October,
2010 regarding Tracey and the police, as the police reports from
each incident do not indicate that Staiger was present or
involved on either occasion.  (*See*, *e.g.*, Oct. 14, 2010 Police
Rep.; McNally Oct. 18, 2010 Police Rep.)  Thus, each of Tracey's
claims against Staiger arise from the events of April 9, 2011.

Counts X and XIV of Tracey's Amended Complaint allege that
Staiger falsely arrested and imprisoned Tracey.  To prove a
claim for false arrest, a plaintiff must prove two elements:

22

(1) that there was an arrest; and (2) that the arrest was made
without probable cause. *Islam v. City of Bridgeton*, 804
F.Supp.2d 190, 197 (D.N.J. 2011) (citing *Dowling v. City of
Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)). To prove a
claim for false imprisonment, a plaintiff must similarly prove
two elements: (1) that the plaintiff was detained; and (2) that
the detention was unlawful. *James v. City of Wilkes-Barre*, 700
F.3d 675, 682-83 (3d Cir. 2012) (citing *Wallace v. Kato*, 549
U.S. 384, 389 (2007)). When a false imprisonment claim is based
on an arrest without probable cause, as Tracey's complaint
alleges here, the claim is grounded in the protections
guaranteed by the Fourth Amendment and its protection against
unreasonable seizures. *James*, 700 F.3d at 683 (citing *Groman v.
Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).

"Probable cause exists when, based on the factual
circumstances, a prudent person could believe that a particular
suspect has committed or is committing an offense." *Islam*, 804
F.Supp.2d at 197 (citing *Sharrar v. Felsing*, 128 F.3d 810, 817-
18 (3d Cir. 1997)). Such an inquiry is fact-specific. *Islam*,
804 F.Supp.2d at 197 (citing *Illinois v. Gates*, 462 U.S. 213,
232 (1983)).

Though a great deal of the factual circumstances on April
9, 2011 remain in dispute, those facts relevant to determining
Staiger's liability permit the Court to grant summary judgment

in Staiger's favor.  As recorded in Staiger's report from the
April 9 incident, he arrived at Ronald and Lavina's home at
McNally's direction, after Lyons made a radio call that he was
attempting to stop a vehicle that would not pull over.  (Staiger
Apr. 9, 2011 Police Rep. at 1)  As Staiger recounted in his
deposition, he arrived at the scene while Ronald and Lavina were
irate and yelling while Lyons placed Tracey under arrest.  (*E.g.*
Staiger Dep. 109:8-18)  There is no indication in the record
that Staiger interacted with Tracey at the scene of his arrest.
Instead, the record shows that Staiger simply reported back to
headquarters to aid Lyons with processing Tracey's arrest.
(Staiger Apr. 9, 2011 Police Rep. at 1)  Tracey conceded that he
did not recall seeing Staiger on the scene of his traffic stop.
(T. Miller Dep. 250-251, Aug. 27, 2012)  Staiger's remaining
interactions with Tracey consisted of summoning medical
assistance for Tracey, and after Tracey's medical clearance,
transporting Tracey to Camden County Jail.  (Staiger Apr. 9,
2011 Police Rep. at 1-2)  In short, Staiger's interaction with
Tracey only began after Tracey was taken into custody, and
Staiger was entirely ancillary to any decision to take Tracey
into custody in the first place, or keep Tracey in custody
during processing.  Ultimately, these actions do not constitute
false arrest or imprisonment as Staiger had probable cause to
aid in Tracey's post-arrest processing, based on the

circumstances at the scene and the instructions from his superior officers. Staiger is therefore entitled to summary judgment in his favor on Counts X and XIV.[11]

Tracey's Amended Complaint also includes a charge of negligence against Staiger. The thrust of this claim is that Staiger negligently relayed information regarding the phone call that indicated Tracey was out drinking and would later be driving home with children in his car. (Am. Compl. ¶ 143) The New Jersey Tort Claims Act provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3. To obtain this good faith immunity, a public employee must either act in an objectively reasonable fashion, or demonstrate subjective good faith. *Alston v. City of Camden*, 773 A.2d 693, 703 (N.J. 2001).

Even taking the facts in the light most favorable to Tracey, Staiger's acts of passing along a tip to fellow police officers is objectively reasonable. There is no indication that Staiger did anything besides inform his colleagues that he received word that Tracey was at a bar, and later would be driving home with his kids in the car. (Staiger Dep. at 26:21-

---

[11] The Court will also grant summary judgment in Staiger's favor for the New Jersey Civil Rights Act ("NJCRA") claim (Count XVIII). The New Jersey CRA is interpreted analogously to § 1983, which serves as the basis of Tracey's false arrest and false imprisonment claims. *Pettit v. New Jersey*, 09-cv-3735 (NLH), 2011 WL 1325614, at *3 (D.N.J. March 30, 2011). The Court therefore grants summary judgment in Staiger's favor on the NJCRA count as well.

25)  Tracey had no recollection that Staiger was involved in any
other way, and there is no indication that Staiger interacted
with Tracey other than to accompany Tracey through the
processing of his arrest.  (T. Miller Dep. at 251:5-7, Aug. 27,
2012; Staiger Apr. 9, 2011 Police Rep. at 1-2)  Staiger is
therefore entitled to good faith immunity, which requires
summary judgment in his favor on Count XXII.

### b.

The Court may also grant summary judgment in favor of
Passarella on Tracey's claims of conspiracy.  Tracey's civil
rights claims against Passarella are limited to these conspiracy
claims per the Court's order of February 15, 2013.[12]  (Case: 11-
cv-3405, dkt. no. 110, at 2)

To bring a claim for conspiracy to interfere with civil
rights, a plaintiff must show the following:

---

[12] As described at oral argument, Passarella was initially dismissed from this
action, but Tracey was permitted to amend his Complaint and add Passarella to
the action following a showing of evidence during the fact discovery process.
While Tracey's Amended Complaint brings now brings a claim pursuant to 42
U.S.C. § 1983, a conspiracy to deprive a citizen of their civil rights would
normally fall under § 1985.  Recognizing that Tracey's claim was limited to
the conspiracy allegation (pursuant to the Court's Order of February 15,
2013) the Court treats the conspiracy claim as one falling under § 1985.
Even if Tracey sought to amend or reinstate his claim under §1983 claim, such
an amendment would not be timely, and moreover, Passarella did not come into
physical contact with Tracey in a fashion that could give rise to a § 1983
claim (nor is there any indication in the record that Passarella was at the
scene of Tracey's arrest during the struggle which might give rise to some
sort of supervisory liability for excessive force).  Thus, the Court would
grant summary judgment in Passarella's favor regardless.

> (1) a conspiracy; (2) for the purpose of
> depriving, either directly or indirectly, any
> person or class of persons of the equal
> protection of the laws, or of equal privileges
> and immunities under the laws; and (3) an act
> in furtherance of the conspiracy; (4) whereby
> a person is injured in his person or property
> or deprived of any right or privilege of a
> citizen of the United States.

*Farneski v. Cnty. of Hunterdon*, 916 F.Supp.2d 573, 587 (D.N.J.

2013) (quoting *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d

Cir. 2006)).

At the close of fact discovery, Tracey has failed to

demonstrate that Passarella was part of a conspiracy to deprive

Tracey of his civil rights.  At base, Tracey argues that

Passarella disseminated information about Madera's phone call to

other Waterford Township police officers, (Pls. Opp. Br. to

McNally and Passarella Mot. at 65-66), and at oral argument,

Tracey's counsel suggested that such dissemination was

reflective of a pattern of involvement that ran the course of

many months.  However, the record demonstrates that Passarella's

involvement was simply to pass along the fact that Staiger had

received such a tip (*E.g.* McNally Dep. at 234-35).  The

direction provided to Waterford Township police officers was to

investigate the tip, if presented with the opportunity to do so.

(McNally Dep. at 234:22-24)  Such instructions to investigate

Tracey's behavior in the event that an officer sees Tracey

during their patrol simply does not reach the requisite

threshold to demonstrate either some intention to violate Tracey's civil rights. Nor does it indicate that Passarella somehow detained or imprisoned Tracey in furtherance of a conspiracy; in fact, as with Staiger's involvement, there is no indication in the record that Passarella ever arrested Tracey or interacted with Tracey after he was taken into custody.

Passarella is therefore entitled to summary judgment in his favor on the conspiracy claims, as well as the false arrest and imprisonment claims pled against him in Counts IV, XI, and XV.[13]

### 2.

The Plaintiffs bring a variety of civil rights and state common law claims. Each is considered in turn, with the exception of S.M.'s claims, which are considered separately in section 3, *infra*.

### a.

Counts I and II of Tracey's Amended Complaint allege that McNally (Count I) and Lyons (Count II) are liable for violations of Tracey's § 1983 rights. Counts XVI (against McNally) and XVII (against Lyons) allege parallel claims under the New Jersey

---

[13] Again, the NJCRA is interpreted analogously with § 1983. *Pettit*, 2011 WL 1325614, at *3. The Court therefore grants summary judgment on Tracey's NJCRA claim (Count XIX) in Passarella's favor as well.

Constitution.[14]  Ronald and Lavina allege similar claims against Lyons and McNally.[15]

In considering each these claims, the Court must determine whether the relevant Defendants' actions were "objectively reasonable in light of the facts and circumstances confronting [him], without regard to the officer['s] underlying intent or motivation."  *Norcross v. Town of Hammonton*, No. 04-cv-2536 (RBK), 2008 WL 9027248, at *4 (D.N.J. Feb. 5, 2008) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  To determine whether any given Defendant's actions were objectively reasonable, the Court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  The Third Circuit also instructs that courts should consider factors like the duration of the action, whether an arrest is in progress, whether the suspect is possibly armed, and the number of persons that the police must contend with at the scene.  *Bou v. New Jersey*, No. 11-cv-6356

---

[14] Again, these NJCRA claims are considered together with the § 1983 claims. *See Pettit*, 2011 WL 1325614, at *3.  In section e, *infra*, the Court separately considers Tracey's supplemental claims of negligence and violation of the NJCRA alleged in the Supplemental Complaint.

[15] Specifically, Counts I and II allege McNally and Lyons violated § 1983, and Counts V and VI allege parallel violations of the NJCRA.

(JEI/AMD), 2013 WL 4517940, at * 7 (D.N.J. Aug. 26, 2013)

(citing *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006)).  The

"'reasonableness' of a particular use of force must be judged

from the perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight." *Graham*, 490

U.S. at 396.

Here, the Court finds that there are genuine issues of

material fact precluding the grant of summary judgment on

Tracey's excessive force claims arising from the April 9

incident.  At the close of discovery, there are at least two

narratives on the circumstances of the April 9, 2011 traffic

stop.  In Tracey's retelling, Lyons followed Tracey for between

a quarter and half mile with Lyons's lights and sirens on before

Tracey pulled into his parents' driveway.  (T. Miller Dep.

242:15-16, Aug. 27, 2012)  According to Tracey, he stepped out

of the vehicle and Lyons immediately approached him, informing

him he was under arrest for illegally tinted windows, and

without any further conversation "slammed" Tracey on the ground.

(*Id.* at 244:2-10)  Tracey maintained that he did not attempt to

flee, nor was there any subsequent conversation before Lyons

"slammed" Tracey to the ground.  (*Id.* at 244:8-10; *Id.* at

244:23-24)  On the other hand, Lyons's report following the

incident details how Tracey, once he exited his vehicle, walked

away from his car and towards the front door of his parents'

house, ultimately ending up behind Ronald and Lavina Miller
before Lyons came over to arrest him. (Lyons, Apr. 9, 2011
Police Rep. at 2) Ronald Miller testified that Lyons was
"screaming . . . like a crazy man. He was snorting. He looked
like a crazy man, you know." (R. Miller Dep. at 16:13-14) On
the other hand, Lyons described a scene where Tracey was
punching Lyons with a closed fist in the chest while Lyons
attempted to take him into custody. (Lyons Dep. at 150)
Moreover, while other officers eventually responded to the
scene, Lyons could not recall how long he waited before other
officers finally responded to help him address the situation.
(*Id.* at 146:10-11)

Absent resolution of the factual disputes regarding the
circumstances and physical contact between Tracey and Lyons, the
Court cannot analyze the factors to determine whether Lyons's
actions towards Tracey were objectively reasonable. For
example, it is unclear whether Tracey was attempting to evade
arrest by hiding behind his parents, or whether Lyons walked
right up to Tracey and tackled him without provocation.
Furthermore, without knowing when other officers actually
arrived, the Court cannot determine whether Lyons had to deal
with three uncooperative adults on his own, or if the numbers
were in fact different. Given these disputes, the Court cannot
conclude that Lyons did not use excessive force and therefore

cannot grant summary judgment in Lyons's favor on Tracey's claims of excessive force.

Similarly, the Court cannot grant summary judgment in McNally's favor regarding Tracey's allegations of excessive force. As recounted in his deposition, Tracey was certain that McNally hit him, either with his closed fist or knee, during the course of a struggle between the two of them on April 9. (T. Miller Dep. 247:24, Aug. 27, 2012) Similarly, Ronald indicated that in his recollection, McNally was "punching Tracey in the head with his knee in [Tracey's] back." (R. Miller Dep. 26:1) In contrast, McNally testified that once he arrived on the scene, Tracey "kind of stopped resisting when [he] got there." (McNally Dep. at 223:14-15) In McNally's recollection, he was able to simply handcuff Tracey and walk him over to Lyons's police vehicle, as Lyons was then able to address Ronald and Lavina. (McNally Dep. at 224-25) These factual disputes preclude the Court from determining whether McNally is responsible for any force, let alone excessive force, against Tracey. The Court therefore cannot analyze the requisite factors and in turn cannot grant McNally summary judgment on Tracey's claims of excessive force.

In addition, the Court cannot grant summary judgment to Lyons regarding Ronald and Lavina's claims for excessive force. Both Ronald and Lavina's claims arise solely from the incident

on April 9, 2011, which is the subject of numerous factual disputes regarding the events surrounding all of the arrests. In light of these disputes, the Court cannot analyze the factors to determine whether Lyons's actions were objectively reasonable regarding Ronald, who was tackled either (1) without warning, or (2) after failing to cooperate with Lyons's instructions. (*Compare* Lyons Dep. at 156:20-22 *with* R. Miller Dep. at 17:1-14) Similarly, there is a dispute regarding whether Lavina was even struck with Lyons's flashlight, which is the physical contact giving rise to Lavina's excessive force claim. (*Compare* Lyons Dep. at 155:1 *with* L. Miller Dep. at 62:3) These factual disputes preclude summary judgment on Ronald and Lavina's claims for excessive force against Lyons in Counts II and VI.

The Court may, however, grant summary judgment in favor of McNally as to the civil rights violations alleged by Ronald and Lavina Miller. McNally arrived at the scene on April 9, 2011, after an altercation between Tracey, Ronald, Lavina, and Lyons had already begun. (Lyons April 9, 2011 Police Rep. at 2; McNally April 9, 2011 Police Rep. at 1) There is no indication in the record that McNally made any physical contact with either Ronald or Lavina on April 9. Neither Ronald nor Lavina describe any physical altercation with McNally in their depositions, and Ronald conceded at his deposition that "I had no confrontation with McNally at all." (R. Miller Dep. at 30:20) Given the

parties' agreement that there was no physical contact between McNally and both Ronald and Lavina, the Court can conclude that McNally in fact used no force on Ronald or Lavina, and therefore McNally is entitled to summary judgment in his favor on their excessive force claims in Counts I and V.

**b.**

Tracey, Ronald, and Lavina also bring common law claims for assault and battery against Lyons, as well as negligence against Lyons and McNally.[16]  Lyons and McNally argue, *inter alia*, that summary judgment should be granted in their favor as to these claims because if the force used against Tracey was not excessive, then they cannot be liable for assault and battery, nor for negligence.

Lyons properly points out that a police officer will generally not be liable for assault or battery unless the force used was excessive.  *Hill v. Algor*, 85 F.Supp.2d 391, 411 (D.N.J. 2000); *State v. Williams*, 148 A.2d 22, 28-29 (N.J. 1959).  The Court has already explained that genuine issues of material fact preclude a determination of whether the force that Lyons and McNally used against Tracey was excessive.  In light

---

[16] Specifically, Tracey's Counts V (McNally) and VI (Lyons) allege assault and battery, and Counts XX (McNally) and XXI (Lyons) allege negligence.  Ronald and Lavina's Count VII (Lyons) alleges assault and battery, and XII (McNally) and XIII (Lyons) allege negligence.

of this conclusion, the Court cannot grant summary judgment dismissing Tracey's assault and battery claims against Lyons and McNally.[17]

The same analysis applies equally to Ronald and Lavina regarding their claims for assault and battery against Lyons. As the factual circumstances surrounding their contact with Lyons on April 9, 2011 remains in dispute, the Court cannot determine whether the force that Lyons used against them was excessive. The Court therefore cannot grant summary judgment dismissing Ronald and Lavina's assault and battery claims against Lyons.

In considering Tracey, Ronald, and Lavina's negligence claims against Lyons and McNally, the Court cannot grant summary judgment. "In New Jersey, as elsewhere, it is widely accepted that a negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Utility Co.*, 59 A.3d 561 (N.J.

---

[17] The Defendants also argue that they are entitled to the protections of good faith immunity under N.J.S.A. 59:3-3, which (as described *supra*) provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." The New Jersey Supreme Court construes this good faith immunity under the "same standard of objective reasonableness that applies in Section 1983 actions." *Wildoner v. Borough of Ramsey*, 744 A.2d 1146, 1153 (N.J. 2000). As genuine issues of material fact remain regarding the force used on April 9, 2011 and whether Lyons and McNally were objectively reasonable in their contact with Tracey, the Court cannot determine whether Lyons or McNally acted in good faith according to N.J.S.A. 59:3-3.

2013).  Given the dispute regarding the actual circumstances of Tracey and Ronald's arrests by Lyons and McNally (and the citation issued to Lavina), the Court cannot determine whether Lyons or McNally undertook any negligent behaviors during the course of events on April 9, 2011.  As such, the Court cannot grant summary judgment in Lyons or McNally's favor on Tracey, Ronald, and Lavina's negligence claims.

### c.

The Court next turns to Tracey, Ronald, and Lavina's claims for false arrest and imprisonment against McNally and Lyons. The Court first addresses Tracey's claims against Lyons,[18] then turns to Ronald and Lavina's claims against both Lyons and McNally.[19]  The Court separately addresses Tracey's false arrest and imprisonment claims against McNally in section d, *infra*.

As previously discussed, when a false imprisonment claim is based on an arrest without probable cause, as the Plaintiffs' Amended Complaints allege, the claim is grounded in the rights guaranteed by the Fourth Amendment and its protection against unreasonable seizures.  *James*, 700 F.3d at 683 (citing *Groman*, 47 F.3d at 636).  "Probable cause exists when, based on the

---

[18] Counts IX and XIII of Tracey's suit.
[19] Counts VIII (false arrest) and X (false imprisonment) are alleged against McNally, while Counts IX (false arrest) and XI (false imprisonment) are alleged against Lyons.

factual circumstances, a prudent person could believe that a particular suspect has committed or is committing an offense." *Islam*, 804 F.Supp.2d at 197 (citing *Sharrar* 128 F.3d at 817-18). Such an inquiry is fact-specific. *Islam*, 804 F.Supp.2d at 197 (citing *Gates*, 462 U.S. at 232).

Turning first to Tracey's claims, the Court cannot grant summary judgment as to the claims of false arrest and false imprisonment as there is a genuine factual dispute regarding the probable cause for the April 9 traffic stop. The probable cause for the traffic stop, according to Lyons, was the fact that Tracey's side windows were illegally tinted.[20] (Lyons Apr. 9, 2011 Police Rep. at 1; Lyons Dep. 133:24) While Tracey conceded that the windows on his vehicle on April 9 were tinted, his recollection of the traffic stop at 9:10 pm that evening was that the tinted windows were rolled down. (T. Miller Dep. at 186:19-21, Sept. 4, 2012) As Lyons explained, the tinted windows were the sole cause for the stop, as Tracey was not speeding at the time nor did Tracey's driving indicate that he was intoxicated. (Lyons Dep. at 132:19-133:3) If the windows were visible to Lyons, probable cause could be established, as

---

[20] Lyons testified in his deposition that his traffic stop of Tracey was solely based on his observation that Tracey's windows were tinted. (Lyons Dep. at 133:24) In his deposition testimony, Lyons specifically ruled out any other basis of probable cause for the stop, noting that Tracey's vehicle did not exceed the speed limit, did not cross the center line, did not make any "erratic" moves, nor were other cars somehow obstructed by Tracey's driving. (Lyons Dep. at 134-38)

Lyons would have seen the tinted windows.  However, given the conflicting recollections and absence of any evidence resolving the dispute, the Court cannot determine whether Lyons's probable cause existed at the time of the stop.  Therefore, Lyons is not entitled to summary judgment in his favor on the false arrest and imprisonment claims.

The Court can, however, grant summary judgment as to Ronald and Lavina's claims of false arrest and false imprisonment. There is no dispute that Ronald and Lavina, upon observing Tracey and Lyons's arrival and the ensuing confrontation, came out of their house during the course of Tracey's arrest.  (*See*, *e.g.*, L. Miller Dep. at 52:24-53:2)  During this time, Lavina described herself as "hysterical," (L. Miller Dep. at 55:5), while Ronald was talking with Tracey during the course of Lyons's physical confrontation with Tracey, (R. Miller Dep. at 15:24-16:2).  As Ronald explained, both he and Lavina failed to follow both Lyons and McNally's instructions to go back inside the house during the course of Tracey's arrest, during which time Ronald and Lavina were alternately speaking on the phone to try to summon help, and also speaking to both Tracey and Lyons. (*E.g.* R. Miller Dep. at 19-20)  In short, even with facts in dispute regarding the circumstances of Tracey's arrest, the undisputed facts demonstrate that Ronald and Lavina were not following either Lyons or McNally's instructions while Lyons

attempted to arrest Tracey.  Such facts provide valid probable

cause for Ronald's arrest on the charges of Aggravated Assault,

Obstruction and Resisting Arrest.  Moreover, the undisputed

factual record demonstrates that Lavina was not arrested, but

was simply issued a summons.  (Lyons Apr. 9, 2011 Police Rep. at

2)  Therefore Lyons and McNally are entitled to summary judgment

in their favor on Ronald and Lavina's claims of false arrest and

imprisonment.

### d.

The Court separately addresses McNally's Motion for Summary

Judgment in his favor on Tracey's claims of false arrest (Count

VIII) and imprisonment (Count XII), as well as malicious

prosecution (Count XXIV).

As a preliminary matter, the undisputed record demonstrates

that McNally acted with probable cause when he assisted Lyons in

arresting Tracey on April 9.  This conclusion rests on similar

grounds as those described *supra* regarding Lyons's arrest of

Ronald.  The undisputed record explains that McNally's initial

involvement in the April 9 incident began as a result of

McNally's response to Lyons's radio call that a vehicle refused

to stop as Lyons tried to pull it over.  (McNally Apr. 9, 2011

Police Rep. at 1)  When McNally reached the scene, though there

is some confusion about the physical altercation between Lyons

and Tracey, Ronald, and Lavina, there is no dispute that Lyons was in the process of attempting to take Tracey into custody while Ronald and Lavina yelled at Lyons. (*E.g.* L. Miller Dep. at 55:5 (describing herself as "hysterical").) While the parties dispute exactly how the altercation between Ronald, Lavina, Tracey, Lyons, and McNally took shape, there is no dispute that when McNally arrived, he was responding to a call from a fellow officer that a car stop had turned into a car chase. Coming upon a scene of confusion, the facts indicate that McNally had a valid reason, and therefore probable cause, to assist in arresting Tracey.

However, the disputed events of October 18, 2010 prevent the Court from granting summary judgment in McNally's favor and fully dismissing Tracey's claims. These disputed circumstances preclude a grant of summary judgment in McNally's favor on Tracey's claims of malicious prosecution, false arrest, and false imprisonment.

As with claims for false arrest and imprisonment, the tort of malicious prosecution also contains a probable cause requirement. The tort of malicious prosecution requires the plaintiff to demonstrate that (1) the previous action was initiated by the defendant, (2) the action was motivated by malice, (3) there was an absence of probable cause, and (4) the

action was terminated favorably by the plaintiff.  *Land v.*
*Helmer*, 843 F.Supp.2d 547, 550 (D.N.J. 2012).

In evaluating whether McNally acted with probable cause
when he initiated a traffic stop on October 18, the Court is
presented with conflicts in the evidentiary record that prohibit
summary judgment in McNally's favor.  As described McNally's
police report, Tracey's arrest on October 18 began with
McNally's observation of Tracey driving by 658 Pestletown Road
in Waterford Township, taking photographs of McNally speaking
with Tom Watson.  (McNally Oct. 18, 2010 Police Rep. at 1;
McNally Dep. at 170:25-171:16)  A short while later, McNally
observed Tracey pull into an abandoned parking lot, where Tracey
apparently stepped out onto the running board of his vehicle and
attempted to take pictures of McNally driving past.  (McNally
Oct. 18, 2010 Police Rep. at 1-2)  Such unauthorized pictures
might provide the requisite grounds for the charge of stalking,
which Tracey was eventually charged with.  (McNally Oct. 18,
2010 Police Rep. at 1)

However, the record reflects a conflicting version of
events as told by S.M., who was in Tracey's vehicle during the
traffic stop.  In S.M.'s retelling, after driving past Tom

Watson's house,[21] Tracey pulled off the road because he heard a
rattling in the back of his truck.  (S.M. Dep. at 18:4-5)  In
S.M.'s testimony, following her father's stop in the parking
lot, McNally simply approached Tracey's truck without warning
and with his gun drawn as he sought to arrest Tracey.  (S.M.
Dep. at 18:14-19:17)   This view of Tracey's arrest directly
contrasts with McNally's report, creating a dispute that is
material to determining whether McNally's arrest, imprisonment,
and initiation of Tracey's prosecution was done with probable
cause.  Because of these disputed facts, the Court cannot grant
summary judgment in McNally's favor on Tracey's false arrest,
false imprisonment, and malicious prosecution claims.

### e.

Tracey brings two additional claims against McNally,
alleging in a supplemental complaint that McNally is liable for
a violation of the NJCRA for use of excessive force and common
law negligence.  (Tracey Miller Second Am. & Suppl. Compl. at ¶¶
13-29)  As alleged and described in deposition testimony, these
two claims arise from a verbal confrontation on March 12, 2012

---

[21] Tracey does not dispute that he took video of McNally and Watson speaking
when he drove past 658 Pestletown Road on October 18, 2010.  (T. Miller Dep.
at 108:9, Aug. 27, 2012)

between Tracey and McNally at Starky's Pour House in Winslow
Township. (T. Miller Dep. at 59-60, Sept. 4, 2012)

Claims under the NJCRA alleging excessive force are
evaluated in the same fashion as those claims under the United
States Constitution brought under § 1983. *See*, *e.g.*, *Norcross*,
2008 WL 9027248, at *4. As McNally points out, a suit under §
1983, "requires the wrongdoers to have violated federal rights
of the plaintiff, and that they did so while acting under color
of state law." *Groman*, 47 F.3d at 638. The "under color of
state law" requirement is a threshold issue, and the plaintiff
bears the burden of demonstrating that the defendant satisfies
this requirement, as there is no liability under § 1983 for
those not acting under color of law. *Id.* (citing *West v.
Atkins*, 487 U.S. 42, 48 (1988); *Versarge v. Twp. of Clinton*, 984
F.2d 1359, 1363 (3d Cir. 1993)).

To act under color of state law, the defendant in a § 1983
action must "exercise[] power 'possessed by virtue of state law
and made possible only because the wrongdoer is clothed with the
authority of state law.'" *West*, 487 U.S. at 49 (quoting *United
States v. Classic*, 313 U.S. 299, 326 (1941)). Off-duty police
officers may act under color of state law, particularly in
circumstances where the off-duty officer is in a police uniform,
orders a citizen repeatedly to halt, and seeks to arrest

43

citizens. *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999) (citing *Griffin v. Maryland*, 378 U.S. 130, 135 (1964)).

Even viewing the facts in the light most favorable to Tracey, McNally is entitled to summary judgment in his favor on Tracey's NJCRA claim. As Tracey conceded in his deposition, McNally was off duty during the course of the events in question on March 12, 2012. (T. Miller Dep. at 168:15-16, Sept. 4, 2012) McNally was not in uniform that evening, and as Tracey described in his deposition, McNally was clearly off duty, consuming alcohol, and not working as a police officer while at Starky's Pour House. (T. Miller Dep. at 62:24-63:1, Sept. 4, 2012) Instead, McNally was at Starky's with Bill Morrow and two women, where (in Tracey's retelling) he was sitting at the bar and yelling to Tracey, "come over here and I'll kick your ass," among other things. (T. Miller Dep. at 64:13-14, Sept. 4, 2012) Because the undisputed record demonstrates that McNally's yelling, behavior, and attire would not qualify McNally as acting under state authority, the Court cannot conclude that any of his actions could be construed as falling under the color of state law. Because McNally was not acting under color of state law, he cannot be held liable for violating Tracey's civil rights while acting under color of state law, and McNally is therefore entitled to summary judgment on the NJCRA claim.

Similarly, McNally is entitled to summary judgment in his favor on Tracey's negligence claim arising from the March 12 confrontation. To establish liability for negligence, a plaintiff must demonstrate a duty of care, breach of that duty, actual and proximate causation, and damages. *Jersey Cent. Power & Light Co.*, 59 A.3d at 571.

> The standard of care ordinarily imposed by negligence law is well established. To act non-negligently is to take reasonable precautions to prevent the occurrence of foreseeable harm to others. . . .
>
> It is not, however, enough to ground liability in negligence to show that a defendant did not act with reasonable care, and that this carelessness caused injury. Plaintiff must also show that defendant owes him a duty of care.

*Id.* at 571-72 (quoting *Weinberg v. Dinger*, 524 A.2d 366, 374 (N.J. 1987)). Whether a duty exists between two parties "is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." *Weinberg*, 524 A.2d at 374 (quoting *Kelly v. Gwinnell*, 476 A.2d 1219, 1222 (N.J. 1984)).

Even when viewing the facts in the light most favorable to Tracey, the Court may grant summary judgment in McNally's favor. First, the record does not demonstrate that Tracey suffered any harm as a result of McNally's verbal taunts. Second, the record

does not support an assertion that McNally had any cognizable duty that he would have owed to Tracey during the incident in question on March 12, 2012.  Though various regulations of the Waterford Township police department govern the interactions of sworn officers and citizens, (*see*, *e.g.*, Code of Conduct, Rules and Regulations, Adopted by Waterford Township Police Department at ¶¶ 11:1-11:163), off-duty officers are not held to all of these regulations, (*id.* at ¶ 10:14).  As there is no dispute that McNally was off duty at the time of the verbal confrontation, such regulations do not provide a basis for imposing a heightened duty of care on McNally.  (T. Miller Dep. at 168:15-16, Sept. 4, 2012)  As Tracey cannot demonstrate that McNally owed him a duty of care during their confrontation on March 12, 2012, McNally is therefore entitled to summary judgment in his favor on this separate negligence claim.

### 3.

Finally, the Court returns to Lyons and McNally's Motions for Summary Judgment as to each of the civil rights and common law claims alleged by S.M.[22]  The Court considers each of these

---

[22] Specifically, Counts I and II allege McNally and Lyons violated § 1983, and Counts VIII and IX allege parallel violations of the NJCRA.  Additionally, Counts XI and XII allege that McNally and Lyons were negligent.  As discussed *supra*, Waterford Township is entitled to summary judgment in its favor on S.M.'s § 1983 and negligence claims.

claims and concludes that the Defendants are entitled to summary judgment in their favor on each.

Similar to Tracey, S.M. brings claims against Lyons and McNally under § 1983, the New Jersey Civil Rights Act ("NJCRA"), and state law negligence. These claims are rooted in S.M.'s presence at traffic stops on October 18, 2010, and April 9, 2011. As with Tracey's claim, S.M.'s claims for excessive force under the New Jersey Constitution are construed under the same standards as under the United States Constitution. *Norcross*, 2008 WL 9027248, at *4.

To state a claim under § 1983, a plaintiff must assert that a defendant acted under color of state law to deprive the plaintiff of a personal constitutional right. *Voytko v. Ramada Inn of Atlantic City*, 445 F.Supp. 315, 325 (D.N.J. 1978). A litigant "may only assert his own constitutional rights or immunities" and cannot recover for the deprivation of another's civil rights. *Id.* (quoting *O'Malley v. Brierly*, 477 F.2d 785, 789 (3d Cir. 1973)).

In the instant case, the Court finds that the undisputed record lacks evidence of any constitutional violations against S.M. The thrust of S.M.'s claim is that Lyons and McNally used excessive force in her presence, and that Lyons swung a nightstick in her direction on April 9, 2011. (*See*, *e.g.* Am. Comp. ¶ 41) There is no indication, however, that Lyons or

47

McNally ever made physical contact with S.M. during any traffic stop, or directly infringed upon S.M.'s constitutional rights on another occasion. In her deposition when describing the consequences of the two traffic stops, S.M. expressed concern that her father's vehicle would be pulled over more frequently than when S.M. traveled with Tracey's parents, but S.M. could not articulate any other harm she had personally suffered, even conceding that she did not directly witness any physical and violent contact between Tracey and police. (S.M. Dep. at 75:6-77:21)

In other words, the record is devoid of evidence that S.M. suffered from a deprivation of her own constitutional rights, as S.M. did not directly interact with police. Though S.M. may have observed the potential constitutional violations that may or may not have befallen Tracey, such observation is not enough to assess liability under § 1983. The Court therefore will grant summary judgment in favor of Lyons and McNally on each of S.M.'s constitutional claims.

The Court also finds that McNally and Lyons are entitled to summary judgment in their favor on S.M.'s claims for state law negligence. The basis of S.M.'s state law negligence claims is that Lyons and McNally breached some duty of care to S.M. while they were in her presence during the course of interacting with Tracey. Under New Jersey law, such a breach is not enough to

assess liability, as S.M. is required to demonstrate that she has suffered some damages to recover for a negligence cause of action. *Jersey Cent. Power & Light Co.*, 59 A.3d at 571 ("In New Jersey, as elsewhere, it is widely accepted that a negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages.").

The Court need not address principles of good faith immunity in considering these claims of negligence, as the undisputed facts demonstrate that S.M. has not suffered any harm as a result of Lyons or McNally's actions. As S.M. described in her deposition, she has not had any "fears or issues from what happened on that motor vehicle stop when you were in the car with [her] dad," nor has she seen a doctor, psychologist, or counselor. (S.M. Dep. at 15-16) In short, there is no evidence that S.M. suffered any harm, nor did she indicate that she felt any lasting effects from any of Lyons or McNally's actions. The Court will therefore grant summary judgment in the Defendants' favor on S.M.'s claims of negligence.

### IV.

In light of the foregoing, the Defendants' Motions for Summary Judgment will be granted in part and denied in part. Specifically, Defendants Waterford Township, Passarella, and

Staiger's Motions will be granted in full. Defendants Lyons and McNally's Motions will be granted in part and denied in part. Below, the Court provides a summary of the claims at issue in each case and their disposition following the motions for summary judgment. Appropriate Orders accompany this Opinion.


## Tracey Miller v. Waterford Township, et al. (11-3405)

- Count I (McNally): § 1983 violations – SJ denied
- Count II (Lyons): § 1983 violations – SJ denied
- Count III (Waterford Township): § 1983 violations – SJ granted
- Count IV (Passarella): § 1983 violations – SJ granted
- Count V (McNally): Assault & battery – SJ denied
- Count VI (Lyons): Assault & battery – SJ denied
- Count VII (Waterford Township): § 1983 failure to train – SJ granted
- Count VIII (McNally): False arrest – SJ denied
- Count IX (Lyons): False arrest – SJ denied
- Count X (Staiger): False arrest – SJ granted
- Count XI (Passarella): False arrest – SJ granted
- Count XII (McNally): False imprisonment – SJ denied
- Count XIII (Lyons): False imprisonment – SJ denied
- Count XIV (Staiger): False imprisonment – SJ granted
- Count XV (Passarella): False imprisonment – SJ granted
- Count XVI (McNally): NJCRA violation – SJ denied
- Count XVII (Lyons): NJCRA violation – SJ denied
- Count XVIII (Staiger): NJCRA violation – SJ granted
- Count XIX (Passarella): NJCRA violation – SJ granted
- Count XX (McNally): Negligence – SJ denied
- Count XXI (Lyons): Negligence – SJ denied
- Count XXII (Staiger): Negligence – SJ granted
- Count XXIII (Waterford Township): Negligence – SJ granted
- Count XXIV (McNally): Malicious prosecution – SJ denied
- Supplemental Count I (McNally): NJCRA violation – SJ granted
- Supplemental Count II (McNally): Negligence – SJ granted

Ronald and Lavina Miller v. Waterford Township, et al. (11-3578)

- Count I (McNally): § 1983 violation – SJ granted
- Count II (Lyons): § 1983 violation – SJ denied
- Count III (Waterford Township): § 1983 violation – SJ granted
- Count IV (Waterford Township): § 1983 failure to train – SJ granted
- Count V (McNally): NJCRA violation – SJ granted
- Count VI (Lyons): NJCRA violation – SJ denied
- Count VII (Lyons): Assault & battery – SJ denied
- Count VIII (McNally): False arrest – SJ granted
- Count IX (Lyons): False arrest – SJ granted
- Count X (McNally): False imprisonment – SJ granted
- Count XI (Lyons): False imprisonment – SJ granted
- Count XII (McNally): Negligence – SJ denied
- Count XIII (Lyons): Negligence – SJ denied
- Count XIV (Waterford Township): Negligence – SJ granted


S.M. v. Waterford Township, et al. (11-3579)

- Count I (McNally): § 1983 violation – SJ granted
- Count II (Lyons): § 1983 violation – SJ granted
- Count IV (Waterford Township): § 1983 violation – SJ granted
- Count VI (Waterford Township): § 1983 failure to train – SJ granted
- Count VIII (McNally): NJCRA violation – SJ granted
- Count IX (Lyons): NJCRA violation – SJ granted
- Count XI (McNally): Negligence – SJ granted
- Count XII (Lyons): Negligence – SJ granted
- Count XIV (Waterford Township): Negligence – SJ granted


Date: 1-30-2014


s/ Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**